UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **ASHLEY SCHULTE** | : | Case No. |
| | : | (Judge _____) |
| | : | |
| | : | |
| Plaintiff | : | |
| | : | **COMPLAINT FOR MONEY** |
| -vs- | : | **DAMAGES AND INJUNCTIVE** |
| | : | **RELIEF WITH JURY DEMAND** |
| **CITY OF MIDDLETOWN** | : | |
| | : | |
| Defendant | : | |
| | : | |
| | : | |
| | : | |

Plaintiff Ashley Schulte, by and through her attorneys Andrew R. Kaake, Edward S. Dorsey, and Wood + Lamping LLP, hereby states her claims as follows:

**JURISDICTION AND VENUE**

1. Plaintiff Ashley Schulte ("Schulte") is a female who at all pertinent times has resided in Montgomery County, Ohio. She currently works for the City of Middletown at the Middletown Regional Airport.

2. Defendant City of Middletown ("Middletown") is an Ohio municipal corporation located in Butler County. It owns and operates the Middletown Regional Airport. This Court has federal question jurisdiction over this matter under 29 U.S.C. § 1331 because Counts I, IV, and V raise claims arising under the laws of the United States. This Court has supplemental jurisdiction over the State law claims asserted in Counts II and III pursuant to 29 U.S.C. § 1367.

3. Venue of this matter is proper in this judicial district under 29 U.S.C. §1391(b) because Middletown is located in this judicial district for venue purposes, and because the

violations and breaches giving rise to these claims occurred within this judicial district and Defendant does business in this judicial district.

4. This matter is properly filed in the Western Division of this Court under L.R. 82.1 because Middletown resides in this Division within the meaning of the rule.

5. Schulte is timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that she has complained about sexually inappropriate comments made by her immediate supervisor, Airport Manager Dan Dickten ("Dickten"), and that she has been retaliated against because of her complaint.

## FACTUAL ALLEGATIONS

6. In late 2019, Schulte spoke with Dickten and expressed an interest in working at the Airport fueling airplanes and doing related duties because she liked the work, it would give her the opportunity to work with her father, and it would allow her to provide for herself and her children.

7. Dickten talked with Schulte about her working at the Airport and he offered her a position.

8. Dickten asked Schulte to start work on or about January 5, 2020, but told her that he would not be able to pay her until Middletown formally approved her hiring.

9. Dickten told Schulte that if she worked without pay, it would guarantee her the position and that he would make it up to her later.

10. Schulte's first duties in January 2020 included helping install a Point of Sale system at the Airport. Dickten was fully aware of and permitted this work.

11. Schulte worked full time or nearly full time hours from about January 5, 2020, until on or about February 9, 2020. She was not, and has not, been paid for that work.

12. On or about February 9, 2020, Schulte went on Middletown's payroll and began punching a time card to record her hours of work.

13. During the period from on or about February 9, 2020 and through at least the following fourteen (14) weeks, Schulte's time cards showed that she worked about 35 hours a week.

14. In order to keep Schulte from becoming entitled to health insurance benefits, Dickten intentionally under-reported Schulte's hours to Middletown's payroll department, consistently reporting 29 hours or work a week, or less.

15. Despite having access to Schulte's time cards, Middletown's payroll department did not verify Dickten's report of Schulte's hours.

16. As a result of the under-reporting Schulte's hours, Schulte has not only not been paid for all the hours she has worked, but she has also not received the health insurance benefits to which she is entitled under the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001, *et. seq.* and 26 U.S.C. § 4980H (the "ACA").

17. Schulte has complained to the City about: her not being paid at least minimum wage for her work in January; her not being paid for all her hours; her hours being misreported; her improperly being denied health insurance to which she was entitled under the ACA; and sexually inappropriate comments made by Dickten to her suggesting that she use her "assets" as a female to maintain and increase business at the airport.

18. Dickten has responded to Schulte's complaints by retaliating against her. Dickten's retaliation has included: threats, including telling Schulte that "It's on" after learning that Schulte had retained an attorney; reducing her hours of work; gruff and unpleasant interactions with Schulte; allowing and encouraging a co-worker to make false and defamatory

3

allegations against Schulte; permitting and encouraging a co-worker to illegally record Shulte's conversations and interactions at work; and surveillance of Schulte at work using binoculars while parked nearby.

19. Schulte has reported Dickten's retaliation to Middletown and Middletown has failed and refused to adequately protect Schulte from retaliation by Dickten and her co-worker.

20. As a result of Middletown and Dickten's retaliation and violations of the law, Schulte has lost, or could lose, pay and benefits. She has also suffered emotional distress sufficiently severe that she has sought medical treatment. Her physician has prescribed her medications to deal with her distress.

## COUNT I

**Failure to Pay Minimum Wage under the Fair Labor Standards Act.**

21. The allegations in Paragraphs 1 through 21 of this Complaint are incorporated herein by reference.

22. The Fair Labor Standards Act ("FLSA") requires that Schulte be paid at least minimum wage for any and all hours she worked or was permitted to worked, 29 U.S.C. § 206(a).

23. Middletown suffered and permitted Schulte to work in January and February 2020 without pay, and Schulte is entitled to her unpaid minimum wages, liquidated damages, attorney fees, costs and pre- and post-judgment interest.

## COUNT II

### Violation of Ohio Constitution Article II, Section 34a

24. The allegations contained in Paragraphs 1 through 24 of this Complaint are incorporated in this Count by reference.

25. The Constitution of the State of Ohio, Article II, Section 34a, requires that Ohio employers pay a minimum wage, as adjusted according to the Consumer Price Index. As of January 1, 2020, Ohio's minimum wage is $8.70 per hour.

26. Middletown's failure to pay Schulte minimum wage violated the Ohio Constitution Article II, Section 34a.

27. Middletown's violation of the Ohio Constitution entitles Schulte to back wages, an additional amount equal to two times back wages, her costs, and attorney's fees.

28. Schulte complained about not being paid for her work in January and early February. Through Dickten, Middletown retaliated against Schulte because of her complaint. As a result of that retaliation, Schulte is entitled to an additional amount of not less than $150 per day to deter Middletown from future violations.

## COUNT III

### Violation of O.R.C. § 4111

29. The allegations of Paragraphs 1 through 29 are incorporated in this Count by reference.

30. O.R.C. § 4111.02 requires that all Ohio employers pay employees a minimum wage, as set forth in Article II, Section 34a of the Ohio Constitution.

31. Middletown's failure to pay Schulte minimum wage violated O.R.C. § 4111.

32. Pursuant to O.R.C. § 4111.10, Middletown's violation of Ohio's minimum wage requirements entitles Schulte to back wages, an additional amount equal to two times back wages, her costs, attorney's fees and pre- and post- judgment interest.

33. Schulte complained about not being paid for her work in January and early February. Through Dickten, Middletown retaliated against Schulte because of her complaint. Pursuant to O.R.C. § 4111.14, as a result of that retaliation, Schulte is entitled to an additional amount of not less than $150 per day to deter Middletown from future violations.

## COUNT IV

### Violation of the Employee Retirement Income Security Act ("ERISA") And Patient Protection and Affordable Care Act ("ACA")

34. The allegations contained in Paragraphs 1 through 34 are incorporated in this Count by reference.

35. Upon information and belief, Middletown employs 50 or more full time employees across its operations, including the Airport.

36. Pursuant to the provisions of the ACA, 42 U.S.C. § 18001, et seq. and 26 U.S.C. § 4980H, Middletown is subject to an employer mandate requiring that it to provide employees who work more than 30 hours per week with health insurance benefits.

37. ERISA § 510, 29 U.S.C. § 1140, makes it unlawful for an employer to take any action that interferes with an employee's attainment of health insurance benefits to which the employee might otherwise be qualified to receive.

38. By intentionally and fraudulently misreporting the hours that Schulte worked, Middletown, through Dickten, has deliberately interfered with Schulte's receipt of health insurance benefits, violating the employer mandate of the ACA and the anti-discrimination and retaliation provisions contained in ERISA, including, but not limited to, ERISA § 510.

39. As a result of Middletown's violations, Schulte is entitled to back pay, liquidated damages, punitive damages, injunctive relief, pre-judgment interest, attorney's fees and costs.

## COUNT V

### Retaliation in Violation of Federal and State Law

40. The allegations contained in Paragraph 1 through 40 are incorporated in this Count by reference.

41. The FLSA (29 U.S.C. § 215(a)(3)), ERISA (29 U.S.C. §1140), the Ohio Revised Code (O.R.C. §4111.13 (B)), and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3) each prohibit an employer from retaliating against an employee for raising concerns about wage and hour issues, entitlement to benefits, and discriminatory or harassing conduct.

42. Middletown, through Dickten, has retaliated against Schulte because of Schulte's complaints about Middletown's failure to pay her in accordance with the law, Middletown's failure to provide her with health benefits in accordance with the requirements of the ACA, and Dickten's harassing, intimidating, and offensive behavior.

43. As a result of the retaliation, Schulte has lost, or could lose, pay and benefits. She has also suffered emotional distress sufficiently severe that she has sought medical treatment.

WHEREFORE, Plaintiff Schulte demands that the Court enter a judgment in her favor against Middletown awarding her relief as follows:

A. On Count I, her unpaid minimum wages, liquidated damages, pre- and post-interest, attorney's fees, and injunctive relief;

B. On Count II, her back wages, an additional amount equal to two times back wages, costs, attorney's fees, and amount in excess of $150 per for each day Middletown has been in violation;

    C.    On Count III, back wages, an additional amount equal to two times back wages, her costs, attorney's fees, and pre- and post-judgment interest;

    D.    On Count VI, back pay, liquidated damages, punitive damages, injunctive relief, attorney's fees, costs and pre- and post- judgment interest;

    E.    On Count V, her lost pay, benefits, compensation for emotional distress and pre- and post-judgment interest; and

    F.    Such other legal and equitable relief as the Court deems just.

        Respectfully submitted,

/s/ Edward S. Dorsey
Edward S. Dorsey (Ohio Bar No. 0037620)
Andrew R. Kaake (Ohio Bar No. 0072585)
Wood + Lamping, LLP
600 Vine Street, Suite 2500
Cincinnati, Ohio 45202
Tel:    (513) 852-6040
Fax:    (513) 419-6440
E-mail: arkaake@woodlamping.com
E-mail: esdorsey@woodlamping.com

## JURY DEMAND

Plaintiff hereby requests a jury demand on all issues so triable.

/s/ Edward S. Dorsey
Edward S. Dorsey

8